**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| **JOSE C.,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | **EP-23-CV-00001-RFC** |
| § | |
| **KILOLO KIJAKAZI, Acting** § | |
| **Commissioner of the Social Security** § | |
| **Administration,** § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose C. ("Jose") appeals from the decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), denying his claims for disability insurance benefits ("DIB") under Title II of the Social Security Act.  Pursuant to 28 U.S.C. § 636, the Honorable Senior U.S. District Judge David Briones referred this case to the undersigned Magistrate Judge for a report and recommendation, and, subsequently, the parties consented to have the undersigned decide the case and enter final judgment.  For the following reasons, the Court finds that the Commissioner's decision should be **AFFIRMED**.

### I.    PROCEDURAL HISTORY

On or about February 12, 2021, Jose filed a DIB application alleging disability beginning on February 1, 2019, due to stroke; anxiety; depression; heart surgery; and sleep apnea.  Tr. of Admin. R. at 28, 81, 103 [hereinafter, "Tr"], ECF No. 7.  The disability onset date was later amended to January 1, 2021.  *Id.* at 28.

Jose's application was initially denied on or about May 11, 2021, *id.* at 28, 79–100, 124–28, and again upon reconsideration on or about July 27, 2021.  *Id.* at 28, 101–23, 135.  Upon Jose's

request, Administrative Law Judge ("ALJ") Peter F. Gazda conducted a telephonic hearing on June 9, 2022.  *Id.* at 28, 49–78.  On July 8, 2022, the ALJ issued an unfavorable decision.  *Id.* at 22–48.  The Appeals Council denied Jose's request for review on November 2, 2022.  *Id.* at 11–18.  Thus, the ALJ's decision became the Commissioner's final decision in Jose's case.  *Id.* at 11; *see* 42 U.S.C. § 405(g).

## II.  DISCUSSION

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to a determination of whether (1) the Commissioner's final decision is supported by substantial evidence on the record and (2) the Commissioner applied the proper legal standards.  *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).

Substantial evidence is more than a scintilla but less than a preponderance and is "sufficient for a reasonable mind to accept as adequate to support a conclusion."  *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  To determine whether substantial evidence supports the Commissioner's decision, courts weigh "four elements of proof": "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  A court must "scrutinize the record" but "may not reweigh the evidence, try the issues de novo, or substitute [the court's] judgment for that of the [Commissioner]."  *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989) (per curiam); *see also Perez*, 415 F.3d at 461 ("Conflicts of evidence are for the Commissioner, not the courts, to resolve.").  "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision."  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal quotes and

citations omitted). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Perez*, 415 F.3d at 461.

A court's finding of legal error requires either automatic reversal or harmless error analysis, depending on the steps taken by the ALJ to reach the final decision. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Broadly, "[h]armless error exists when it is inconceivable that a different administrative conclusion would have been reached . . . if the ALJ did not err." *Id.* at 556. Courts apply harmless error analysis "to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) ("Procedural perfection in administrative proceedings is not required.").

### B. Evaluation Process

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ evaluates disability claims according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the claimant's impairment meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ determines the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(e). The RFC "is the most [the claimant] can still do" despite

the limitations caused by his physical and mental impairments. *Id.* § 404.1545(a)(1). The ALJ then considers the RFC to make the step four and step five determinations. *Id.* § 404.1520(e).

At the first four steps, the claimant bears the burden of proving that he is disabled. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). If the claimant meets this burden, at step five the burden shifts to the Commissioner "to show that there is other substantial gainful employment available that the claimant is capable of performing." *Id.* at 1301–02. If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* at 1302.

## C. The ALJ's Findings

In this case, at step one, the ALJ found that Jose had not engaged in substantial gainful activity since January 1, 2021, the amended disability onset date. Tr. 31. At step two, the ALJ found that Jose had the following severe impairments: the residual effects of a cerebrovascular accident ("CVA"), status post-surgical closure of patent foramen ovale ("PFO"), sleep apnea, depression, and anxiety. *Id.* At step three, the ALJ found that Jose did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 32–33.

For Jose's RFC, the ALJ determined that Jose could perform "light work"[1] with the following limitations:

> occasionally stoop, crouch, crawl, kneel, and balance; occasionally climb stairs; and never climb ladders. The claimant must avoid all exposure to heights. The claimant must be allowed to alternate sitting and standing every hour for five minutes at a time. The claimant experiences mild to moderate chronic pain, of sufficient severity to be noticeable to him at all times but can still remain attentive and responsive and can carry out normal work assignments satisfactorily. The

---

[1] A "light work" job "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and either "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

>claimant takes medication that does not prevent him from functioning at the light level as indicated. The claimant is limited to simple tasks. The claimant is limited to occasional handling with the left, non-dominant, upper extremity.

*Id.* at 33–40.

At step four, the ALJ found that Jose's RFC precluded him from performing his past relevant work as a cleanup worker and municipal maintenance worker. *Id.* at 40. At step five, the ALJ considered Jose's age, education, work experience, and RFC and determined that there were jobs that exist in significant numbers in the national economy that Jose could perform. *Id.* at 40–41. Specifically, the vocational expert ("VE") testified that Jose "would be able to perform the requirements of representative occupations such as" a furniture rental clerk or a children's attendant, both of which have light exertional levels. *Id.* at 41. Therefore, the ALJ concluded, Jose was not disabled from the amended disability onset date through the date of the ALJ's decision. *Id.*[2]

**D. Analysis**

Jose alleges that the ALJ erred by (1) issuing an RFC limitation—that he must be allowed to alternate sitting and standing every hour for five minutes—that was not supported by substantial evidence; (2) assessing vague and inconsistent RFC limitations and failing to resolve the inconsistencies in explaining the basis for the work limitations; and (3) issuing an assessment unsupported by substantial evidence at step three that Jose only has mild limitations in interacting with others and failing to include social limitations in the RFC. Pl.'s Br. at 8–20, ECF No. 11.

   **1. RFC Limitation of Alternating Sitting and Standing**

---

[2] The ALJ determined that Jose met the insured status requirements of the Social Security Act through December 31, 2025. Tr. 31.

Jose argues that the RFC limitation stating that he "must be allowed to alternate sitting and standing every hour for five minutes at a time" is not based on substantial evidence in the record. *Id.* at 10–13.  He contends that the ALJ did not explain how he came up with this duration, and that "[u]pon review of the medical evidence and medical opinions of record, there is not opinion or evidence that supports the proposition that [Jose]'s impairments are sufficiently accounted for by allowing him to sit for five minutes every hour." *Id.* at 12.  He argues that the ALJ has impermissibly used his lay opinion to interpret the raw medical data and that "the ALJ has not created any logical bridge whatsoever between the significant restrictions assessed in the RFC and the evidence of record." *Id.*

The Commissioner argues that the ALJ "properly interpret[ed] the medical evidence to determine Plaintiff's capacity for work."  Br. in Supp. of Comm'r's Decision at 4 [hereinafter, "Comm'r's Br."], ECF 16.  The Commissioner points out that the "ALJ is not required to adopt a specific physician's assessment." *Id.*  In this case, the Commissioner asserts, Jose "had normal neurological function, 5/5 strength, and a normal range of motion," all of which "support the RFC finding." *Id.*  The Commissioner also argues that Jose has not demonstrated that he has been harmed by this restriction. *Id.* at 5.

The ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  When evaluating physical limitations, the ALJ will "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." *Id.* § 404.1545(b).  The ALJ "must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010).

There is no requirement that the ALJ adopt a specific physician's assessment when determining a claimant's RFC. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam). "[T]he ALJ cannot completely disregard medical testimony in making an RFC determination, . . . [but] the ALJ's decision need not mirror a medical opinion." *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 553 (S.D. Miss. 2022). The ALJ has the "exclusive responsibility as the fact-finder to evaluate medical opinions . . . and decide whether they are supported by and consistent with the rest of the record." *Myers v. Berryhill*, 373 F. Supp. 3d 528, 535 (M.D. Pa. 2019).

The ALJ considered the examinations conducted by the state agency medical consultants, Patty Rowley, M.D., and Laurence Ligon, M.D. Tr. at 39. Both Dr. Rowley and Dr. Ligon stated in their disability determination explanations that Jose was capable of light work. *Id.* (citing *id.* at 99, 122). They also both stated that Jose would be able to "[s]tand and/or walk" for about six hours out of an eight-hour workday and that Jose would be able to sit for about six hours out of an eight-hour workday. *Id.* at 92, 116. The ALJ noted that these findings were "somewhat persuasive as to the capacity for light work because they are supported by citations to the medical and other evidence and consistent with the evidence as a whole." *Id.* at 39. Even so, the ALJ added that "treatment notes and testimony showing persistent complaints of residual effects of CVA . . . support additional postural, environmental, and manipulative limitations, as set out in the RFC finding." *Id.* at 39–40.

The ALJ also considered Jose's medical records and noted that Jose suffered a right precentral acute ischemic stroke in February 2020. *Id.* at 632. An echocardiogram at the time showed a PFO, which was closed in surgery on June 10, 2020. *Id.* at 632, 841. On March 11, 2021, Jose saw Jose Silva, M.D., at the University Medical Center of El Paso outpatient clinic, and

Dr. Silva "estimat[ed] [Jose] has recovered almost 80% from his CVA." *Id.* at 992.  The ALJ concluded:

> Extensive neurological and cardiovascular workup has shown that surgical repair of the PFO was successful, and that [Jose] recovered from the February 2020 CVA with minimal or no residual left sided weakness . . . .  [Jose] is independent in personal care, . . . suggest[ing] the ability to perform light work as set out in the RFC finding.

*Id.* at 39.  There are no findings in the medical evidence that Jose has identified that establish that he needs more restrictive RFC limitations than the ones provided by the ALJ.

The addition of the RFC limitation related to alternating sitting and standing for five minutes every hour appears to stem from Jose's testimony.  An "ALJ may appropriately reach a specific RFC incorporating" a limitation in a case in which "the record contains at least some evidence of a specific limitation," and "[a] claimant's testimony is acceptable evidence to support the inclusion of a limitation in an RFC determination." *Barone v. Comm'r of Soc. Sec.*, No. 19-CV-00482 (JJM), 2020 WL 3989350, at *5 (W.D.N.Y. July 15, 2020) (citations omitted).  Although "[t]he ALJ must consider the testimony of the claimant," he "need not accept the claimant's contention as to the severity of his condition." *Price*, 401 F. App'x at 986.  Here, the ALJ noted that Jose "testified . . . [h]e can sit for 15 to 20 minutes before changing positions (standing or walking briefly).  He is never in one place for 30 minutes." Tr. at 34 (citing Tr. at 64).  But after reviewing the other evidence, the ALJ determined that "[Jose]'s statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 35.  The ALJ partially accepted Jose's testimony about how he needed to change position every 30 minutes and added this limitation as a result.  Thus, there is a logical bridge between the evidence and this RFC limitation.

The Court also agrees with the Commissioner's argument that an error, if any, committed by the ALJ here is harmless, given that the state medical consultants did not include this restriction in their findings. "Where an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand." *Barone*, 2020 WL 3989350, at *4 (citation omitted). Any error in such a situation would be harmless because correcting the error would lead to a less restrictive RFC and the same finding that the claimant is not disabled.

When developing the RFC, the ALJ considered the medical evidence, medical opinions of record, and the claimant's testimony. The Court concludes that there is substantial evidence to support the ALJ's decision to include this limitation in the RFC.

**2. Vague and Inconsistent RFC Limitations**

    **a. RFC Determination of "Mild to Moderate Chronic Pain"**

Jose asserts that the statement included in the RFC that he "experiences mild to moderate chronic pain, of sufficient severity to be noticeable to him at all times but can still remain attentive and responsive and can carry out normal work assignments satisfactorily" is an overly vague statement. Pl.'s Br. at 15 (quoting Tr. at 33). He asserts that this statement gives "no useful information to the [VE] in assessing whether an individual with such limitations can perform other work in the national economy." *Id.* He also claims that asserting that he "will still be able to complete normal work assignments 'satisfactorily' is putting the cart before the horse," because whether Jose "can work 'satisfactorily' is a vocational finding that we will not discover the answer to until we reach steps four and five" of the five-step process in determining disability. *Id.* Lastly, he also argues that the statement is vague because "[t]here is no way of knowing if the [VE] and the ALJ have the same definition of mild to moderate pain." *Id.* at 16.

The Commissioner asserts that the VE "had no trouble understanding these restrictions when testifying." Comm'r's Br. at 5. The Commissioner also argues that if Jose "had any question about the meaning of these restrictions, the proper forum to raise them would have been at the hearing where the [VE] could have addressed them." *Id.*

An ALJ's hypothetical question to a VE "is defective and constitutes reversible error" if:

1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Shears v. Saul*, No. 7:18-CV-00166-O-BP, 2019 WL 8501100, at *7 (N.D. Tex. Dec. 2, 2019), *report and recommendation adopted*, No. 7:18-CV-00166-O-BP, 2020 WL 830508 (N.D. Tex. Feb. 20, 2020). The ALJ's language "does not make the hypothetical question so vague as to impact the VE's assessment of employability absent some indication that the VE was, himself, confused." *Smith v. Kijakazi*, No. 4:21-CV-00580, 2022 WL 1443685, at *4 (S.D. Tex. May 6, 2022).

To begin, the Court notes that language similar to the language objected to here is common in RFC assessments. *See, e.g., Leyva v. Saul*, No. SA-18-CA-464-HJB, 2019 WL 13081558, at *1 (W.D. Tex. July 19, 2019) ("Mentally, the ALJ found that Plaintiff could maintain reasonable alertness and satisfactorily perform normal work assignments, despite her mild-to-moderate chronic pain and attendant medications."); *Esser v. Saul*, No. 2:21-CV-00045, 2021 WL 9569834, at *4 (S.D. Tex. Dec. 14, 2021), *report and recommendation adopted sub nom. Esser v. Kijkazi*, No. 2:21-CV-00045, 2022 WL 4596310 (S.D. Tex. Sept. 30, 2022) (The RFC included the determination that the claimant had "mild to moderate chronic pain of sufficient severity to be

noticeable to him at all times but he remains able to be attentive and responsive in a work setting and could carry out normal work assignments satisfactorily."); *Esther D. J. v. Kijakazi*, No. 5:20-CV-239, 2022 WL 5434335, at *3 (S.D. Tex. Aug. 3, 2022), *report and recommendation adopted*, No. 5:20-CV-239, 2022 WL 5430194 (S.D. Tex. Aug. 19, 2022) (The RFC assessment stated that the plaintiff "has mild to moderate chronic pain, which is of sufficient severity to be noticeable to her at all times, but she would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily.").

Nor is there any evidence that the VE was confused by the hypothetical question. The ALJ, in his first hypothetical question to the VE, said, "This individual has mild to moderate chronic pain of sufficient severity to be noticeable to him at all times, but he'd still remain attentive and responsive in the work setting and could carry out normal work assignments satisfactorily." Tr. at 73. The VE responded that under this hypothetical, the individual would be unable to perform past relevant work but could perform other jobs in the national economy. *Id.* at 74. The ALJ posed a second hypothetical to the VE, keeping all the factors in the first hypothetical but adding that the individual would be limited to simple tasks and only occasional handling on the left side. *Id.* at 74–75. Again, the VE responded that the individual would be unable to perform past relevant work and identified other jobs that the individual might be able to do. *Id.* at 75. At the end of his questioning, the ALJ asked, "[H]ave you only considered the factors I specified for each hypothetical in answering that hypothetical?" *Id.* at 77. The VE responded, "Yes." *Id.* At no point did the VE express any confusion with the wording of the ALJ's hypothetical.

Lastly, Jose and his counsel were present, *see id.* at 49 (listing who was at the hearing), and had the opportunity to correct any purported deficiencies in the ALJ's question. They did not do

11

so, suggesting that they did not see the wording as problematic at the time. For the mentioned reasons, the Court will not hold that the ALJ's hypothetical was too vaguely worded.

### b. Failure to Account for Shortness of Breath in RFC

Jose complains that the ALJ does not include any specific limitations relating to Jose's shortness of breath in his RFC, even though his dyspnea has required emergency room visits, and he is receiving medical treatment for it. Pl.'s Br. at 16–17. Jose argues that the RFC should contain "environmental limitations to restrict [Jose] from exposure to pulmonary irritants." *Id.* at 16. Further, Jose argues, since the ALJ did not include any information about Jose's dyspnea in his hypothetical questions to the VE, the questions to the VE were "fatally flawed." *Id.* at 17.

The Commissioner contends that the ALJ examined Jose's medical records and noted that Jose "had oxygen saturation between 97% to 100% and normal pulmonary function." Comm'r's Br. at 6 (citing Tr. at 37–39, 868, 870, 1254, 1266–67). Because of these records, the Commissioner asserts, the ALJ was not required to include any environmental restrictions to address Jose's shortness of breath in his RFC limitations. *Id.*

An "ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Loaiza v. Kijakazi*, No. SA-20-CV-01110-ESC, 2022 WL 980154, at *5 (W.D. Tex. Mar. 31, 2022). The weight to be given the evidence is within the ALJ's discretion. *Id.*

Here, the ALJ noted that Jose "complains of subjective shortness of breath, but physical examinations have consistently shown normal oxygen saturation and normal pulmonary/respiratory function." Tr. at 39. Jose testified to suffering from shortness of breath after his stroke on February 26, 2020. *Id.* at 61–62. On January 24, 2021, Jose went to the emergency department complaining of tongue numbness and shortness of breath that had started

three weeks ago. *Id.* at 722. His examining doctor noted, "Respirations are non-labored and [he] has] [s]ymmetrical chest wall expansion." *Id.* at 724. On January 28, 2021, at a follow-up with Dr. Silva, Jose "complain[ed] of a great deal of shortness of breath even though his [oxygen] saturation level [was] up to 99 to 100%." *Id.* at 868. During Jose's February 17, 2021, visit, Dr. Silva reported, "he does not have any wheezing and for the most part he is showing a perfectly normal physical exam." *Id.* at 967. On March 11, 2021, Dr. Silva noted that Jose "continues to have significant shortness of breath even with the most minimal exertion" and prescribed Anoro and albuterol inhalers. *Id.* at 991–92. A CT angiography of the chest from June 1 revealed "[n]o acute pulmonary embolism" but did find "groundglass and nodular airspace opacities." *Id.* at 1001. However, Dr. Silva felt that some findings on the CT scan were related to Jose's COVID-19 infection. *Id.* at 1020. During Jose's August 11 visit to Dr. Silva, Jose's oxygen saturation was 97% and respiratory findings were normal, except for pain between the shoulder blades. *Id.* at 1266–67. Jose visited Caleb Janosz, M.D., on November 29, 2021, to obtain a functional assessment for disability. *Id.* at 1253. Dr. Janosz noted that Jose complained of shortness of breath but added, "Oxygen saturations have always been within acceptable range and exams have been relatively normal." *Id.* Given this history, despite Jose's testimony, the Court finds that there is substantial evidence to uphold the ALJ's determination that Jose's shortness of breath was not supported by the record.

### 3. Consideration of Social Interaction Limitations During Step Three and in the Mental RFC Assessment

Jose's last argument has two parts: he argues that there is no substantial evidence to back up the ALJ's assessment that Jose only has mild, rather than moderate, limitations in interacting with others and that Jose's moderate limitations in interacting with others should then have been included in the RFC assessment. Pl.'s Br. at 18–20. He emphasizes that the two state

13

psychological consultants who examined him noted "moderate" limitations in the domain of interacting with others and specifically noted "moderate" limitations in "[t]he ability to accept instructions and respond appropriately to criticism from supervisors" and "[t]he ability to get alone with coworkers or peers without distracting them or exhibiting behavioral extremes." *Id.* at 18–19 (citing Tr. at 89, 96, 113, 120).

There is a special technique for ALJs to evaluate the severity of a claimant's mental impairments. 20 C.F.R. § 404.1520a(a). First, the ALJ "evaluate[s] [the claimant's] symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." *Id.* § 404.1520a(b)(1). Next the ALJ rates the claimant's degree of limitation in four main areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself (often referred to as "paragraph B criteria"). *Id.* § 404.1520a(c)(3). The paragraph B criteria of "interacting with others" means "the abilities to relate to and work with supervisors, co-workers, and the public." *Id.* § 404, Subpt. P, App.1, § 12.00E(2). The ALJ will rate the degree of limitation in each area as none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). A mild limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited," while a moderate limitation means that the claimant's functioning is "fair." *Id.* § 404, Subpt. P, App. 1, § 12.00F(2). These limitations "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (SSA July 2, 1996).

Here, the ALJ determined that Jose's anxiety and depression were severe impairments. Tr. at 31. The ALJ then specifically considered whether Jose's impairments met the requirements of

§ 12.04 (depressive, bipolar and related disorders) or § 12.06 (anxiety and obsessive-compulsive disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 32. The ALJ concluded that "[t]he severity of [Jose]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." *Id.* To meet the criteria of § 12.04 or § 12.06, a claimant would need to have at least an extreme limitation in one paragraph B criteria or a marked limitation in two of the paragraph B criteria. 20 C.F.R. § 404, Subpt. P, App. 1, §§ 12.04B, 12.06B. The ALJ rated Jose as having a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. Tr. at 32–33. Thus, even if the ALJ had rated Jose's limitation in interacting with others as moderate, Jose's mental impairments would still not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Therefore, even if the ALJ erred, it would be harmless because it still would not have led the ALJ to conclude that Jose was disabled at step three.

Regardless of whether the ALJ rated Jose's limitation in interacting with others as mild or moderate in step three, the ALJ then had to determine Jose's mental RFC. An evaluation of a mental RFC "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." SSR 96-8p, 1996 WL 374184, at *4. The ALJ must look at "[w]ork-related mental activities . . . includ[ing] the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6. As a result, "the findings at steps two and three will not necessarily translate to the language used at

15

steps four and five" and "do not require the use of any particular language." *Hess v. Comm'r Soc. Sec.*, 931 F. 3d 198, 209 (3rd Cir. 2019). That said, "having assessed certain mental limitations at steps two and three, the ALJ is 'required either to include corresponding limitations in the RFC assessment *or* to explain the omission.'" *D.G. v. Kijakazi*, No. 21-CV-01655-NYW, 2022 WL 2666033, at *8 (D. Colo. July 11, 2022) (citation omitted). This is true even if the ALJ rates the mental impairment as mild. *Powell v. Kijakazi*, No. 21-CV-01160-JES-JEH, 2023 WL 2653358, at *4 (C.D. Ill. Mar. 27, 2023).

Here, the ALJ's mental RFC determination limited Jose to "simple tasks." Tr. at 33.[3] The ALJ considered the medical records concerning Jose's anxiety and depression and concluded, "Treatment notes show these conditions have been mostly stable. . . . [Jose] has continued to see [a nurse practitioner] once every three months for medication management and has not followed through with a recommendation for additional mental health counseling." *Id.* at 39. The Commissioner also notes that "[e]xamination notes show [Jose] was cooperative and calm with a normal mood, affect, and behavior." Comm'r's Br. at 6. She cites many medical records that document Jose as being cooperative and having a normal or appropriate mood and affect. *Id.* (citing Tr. at 724, 734, 739, 744, 753, 784, 787, 793, 799, 804, 1254). This is evidence that supports the ALJ's decision not to add additional mental limitations into the RFC. *See Patricia L. v. Kijakazi*, No. 2:20-CV-6736, 2021 WL 5356113, at *10–11 (D.N.J. Nov. 17, 2021) ("[S]table mental health examination findings can provide substantial evidence to support an ALJ's conclusions. . . . [N]ormal findings upon mental status examination . . . can provide substantial support for an ALJ's evaluation of a medical opinion and RFC determination.").

---

[3] Courts in the Ninth Circuit have found that this language is sufficient to include mild or moderate limitations in interacting with others. *See Garza v. Comm'r of Soc. Sec.*, No. 1:21-CV-00403-BAK (SAB), 2022 WL 2974691, at *9 (E.D. Cal. July 27, 2022) (collecting cases). Thus, the ALJ potentially included Jose's limitation in interacting with others in the mental RFC determination.

The ALJ also based Jose's mental RFC determination on the state agency psychological consultants' narrative findings. Tr. at 39; Comm'r's Br. at 6. ALJs may rely on the findings of the state agency consultants and incorporate them into the ultimate RFC determination. *See Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021) (holding that the RFC was supported by substantial evidence when the ALJ "relied on the state agency's 2018 assessment" and "incorporated these findings into [the claimant]'s RFC"). The ALJ does not need to "discuss each individual finding underlying the functional capacity assessment that the state agency psychologists have proposed," as long as "it is apparent that the ALJ did not ignore [their] opinions." *Huber v. Astrue*, No. 4:07-CV-477-A, 2008 WL 4694753, at *7 (N.D. Tex. Oct. 22, 2008). Additionally, an ALJ does not err if he "decide[s] not to include any mental limitations in the RFC determination, [after] finding that the medical evidence in the record indicated that such limitations were not needed." *Goins v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-870-P, 2023 WL 4475633, at *6 (N.D. Tex. June 16, 2023), *report and recommendation adopted*, No. 4:22-CV-0870-P, 2023 WL 4485941 (N.D. Tex. July 11, 2023).

In this case, both consultants, Michael Dennis, Ph.D., and Richard Kaspar, Ph.D., concluded in their narrative explanation of Jose's mental RFC that "[c]laimant can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, make decisions and respond appropriately to changes in routine work setting," with no mention of limitations on interacting with others. Tr. at 97, 120. The ALJ stated that he found the opinions of the consultants to be "somewhat persuasive as supported by thorough explanations and references to the evidence and consistent with the medical and other evidence showing [Jose]'s mental conditions are stable on medications." *Id.* at 39. The Commissioner argues that "[t]he ALJ found these prior administrative

17

findings somewhat persuasive but found [Jose] even more restricted by limiting him to simple tasks." Comm'r's Br. at 6–7.[4]

Because the ALJ considered the relevant evidence in the record, including treatment notes, medical records, and the state psychological consultants' reports, when determining Jose's mental RFC, the Court finds that there is substantial evidence to support the RFC determination.

### III.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED**.

**SIGNED** this 5th day of December, 2023.

_____
**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] As discussed previously, an RFC limitation that is more restrictive than the medical opinions in the record is not a basis for remand. *See supra* Section II.D.1.